UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **Steven W. Bloom,** | ) | Case No. 17-11650 TBM |
| SSN: xxx-xx-2156 | ) | Chapter 13 |
| | ) | |
| **Debtor** | ) | |
| | | |
| **Glencove Holdings, LLC, Plaintiff** | ) | |
| | ) | |
| v. | ) | Adversarial Case No. 17-01255 TBM |
| | ) | |
| **Steven W. Bloom, Defendant** | ) | |

### DEFENDANT STEVEN W. BLOOM'S ANSWER

Comes now, David M. Serafin, counsel for Defendant, Steven W. Bloom, who in response to the Complaint filed by Plaintiff, Glencove Holdings, LLC, respectfully Answers such Complaint as follows:

**I.     JURISDICTION AND VENUE**

1) Defendant admits the allegations contained in Paragraphs 1-2 of the Complaint.

**II.     PARTIES**

2) Defendant admits the allegations contained in Paragraphs 3-4 of the Complaint.

**III.     FACTUAL BACKGROUND**

3) Defendant admits the allegations contained in Paragraph 5 of the Complaint.

4) Defendant denies the allegations contained in Paragraph 6 of the Complaint.  Bloom mentioned to Huw Pierce, Vice President of Glencove Holdings, LLC, about the existence of a Hawker 850XP or 900XP ('Hawker") being a plane that Mr. Pierce should consider for his needs, as opposed to a previously discussed different aircraft, the XL.  Bloom represents that Mr. Pierce had – contemporaneous with this discussion emphasized needing a plane that could travel from the Pierce's home state of Texas to Martha's Vineyard and/or the Caribbean which prompted Bloom to scour the market for different types of aircraft to meet the Pierce's needs and price point.  Bloom ultimately recommended the Hawker 800 XP ('Hawker") which would meet these same travel needs at the specific price point requested by Mr. Pierce.  After discussion the various options, Jennifer Piece, President of Glencove confirmed that she and Huw Pierce

"definitely" wanted the Hawker as it has at least ten seats.  **See Debtor's attached Exhibit A – July 13, 2015 email from Jennifer Pierce to Bloom**.  At the time, Bloom had not yet begun researching the Hawker 800XP aircraft and had not yet identified Raytheon Hawker 800XP, FAA registration #N137LA, serial number 258697, as a possible target aircraft.

5) Defendant DENIES the allegations contained in Paragraph 7 of the Complaint in that Defendant Bloom did not "really push" Plaintiff Glencove Holdings, LLC ("Glencove") towards purchasing one aircraft over a different aircraft.  Additionally, Bloom was not legally or contractually required as an agreed to independent agent to disclose the owner of the Hawker 800 XP to Glencove.  Further, Bloom would testify that neither Mr. nor Mrs. Pierce ever requested the specific identity of the ultimate seller Loretto Aviation, LLC ("Loretto").  Bloom would moreover testify that a basic online search of the FAA website at www.faa.gov would show Loretto to be the seller of the aircraft had the Pierces had the inclination to conduct such a elementary title search.  **See Debtor's attached Exhibit B – September 19, 2015 email from Huw Pierce to Bloom (with a CC to Jennifer Pierce on this email) showing an image copied from the www.faa.gov website showing Huw Pierce on the FAA online N-Number registry, which tracks aircraft registration/title.**

6) Defendant DENIES the allegations contained in Paragraph 8 of the Complaint in that Defendant Bloom did not "push" or otherwise compel Glencove to enter into the July 30, 2015 Agent Agreement, which was freely and voluntarily entered into by both parties.  See **Debtor's attached Exhibit C - July 30, 2015 Agent Agreement** signed on August 5, 2015 by Jennifer Pierce, President of Glencove.  (This also been marked as Glencove's Exhibit 7.)  Bloom does admit that he received an agreed to flat fee commission of $121,000.00.  However, Bloom denies that he breached *any* duty or obligation to Glencove as an independent agent and further denies that he and Bloom Business Jets ("BBJ") "concocted" a "plan" or conspiracy to purposely overcharge Glencove.  The Pierces are confusing their own inexperience, inattentiveness and gross negligence in the form of an exaggerated and false claim of fraud now against Bloom and BBJ.

Bloom points to the ARTICLE 5: INDEMNITY paragraph of the July 30, 2015 Agent Agreement which states that Glencove represents and agrees to indemnify and hold Bloom harmless from and against <u>all claims</u> (underlined added by Bloom for emphasis) in connection with the services provided.

Bloom further points to ARTICLE 9: NO EMPLOYER RELATIONSHIP of the July 30, 2015 Agent Agreement which, in pertinent part, states as follows: AGENT's relationship with BUYER is that of an <u>independent</u> AGENT, and **nothing in the Agreement is intended to or should be construed to; create a partnership, agency, joint venture or employment relationship** (boldface added by Bloom for emphasis).

7) Defendant DENIES the allegations contained in Paragraph 9 of the Complaint in that Defendant Bloom and BBJ did not provide Glencove with any intentional miscommunications or any false and misleading information or statements related to the aircraft.  Bloom further categorically denies any "campaign of disinformation" made to Glencove or any of the other hyperbole type adjective ridden statements alleged by Glencove.

Bloom here points to Glencove's Exhibit 10 whereby Bloom, on August 12, 2015, states that he was attempting to "get them (Glencove) down another $75,000 to $90,000" from the offer (from the seller) which came back at $3,775,000.

Additionally, Bloom is not legally or contractually required as an independent agent to list the name or identity of the seller of the aircraft (which, in retrospect would have certainly incentivized Glencove to circumvent Bloom and BBJ and do a deal directly with seller Loretta).

8) Defendant DENIES the allegations contained in Paragraph 10 of the Complaint that he committed any type of deception upon Glencove. Bloom did not make it "seem that various offers and counteroffers were being made" although Bloom agrees that the seller Loretto was driving a hard bargain, particularly as to which party should be responsible for a given repair or maintenance related cost, when negotiating with Bloom and BBJ. In fact, on August 12, 2015, after Bloom had originally emailed stating that he wanted to get Loretta down on the offered price and after recommending that Glencove make a $3,525,000 counteroffer, Jennifer Pierce emailed Bloom back just 73 minutes later stating that Glencove agreed to the $3,550,000 purchase price - See **Debtor's attached Exhibit D – August 12, 2015 email thread between Bloom and Jennifer Pierce**. The first email of this thread from Bloom stated to Mrs. Pierce that he intended to get Loretta down "another $75,000 to $90,000."

9) Defendant DENIES the allegations contained in Paragraph 11 of the Complaint as he did not "dupe" Glencove. Bloom and BBJ did request a $100,000 escrow deposit (per Glencove Exhibit 10) to provide to the Insured Aircraft Title Service ("IATS") as a down payment as is common in the aircraft industry. There is certainly nothing illegal or unethical about an independent agent like Bloom asking that the buyer Glencove put up its own escrow deposit for the aircraft that it intended to purchase (as opposed to from Bloom's or BBJ's own funds).

10) Defendant DENIES the allegations contained in Paragraph 12 of the Complaint. Bloom is not responsible for the actions of a non-insider outside third party, IATS, and he did not act in an "underhanded" manner. It's not underhanded of Bloom to request that the identity of a party on the other side of a deal remain confidential as there was no duty of Bloom per the Agent Agreement and is common in the industry to disclose this information.

11) Defendant admits and denies the allegations contained in Paragraphs 13-14 of the Complaint. As an independent agent as literally defined in the Agent Agreement, Bloom was under no legal or contractual obligation or any other obligation to disclose the $3,300,000 price that Loretto agreed to sell the aircraft to Bloom and BBJ, or to notify Glencove the identity of Loretto. Bloom asserts that the Pierces knew that Bloom or BBJ did not in themselves own any type of aircraft and there was accordingly a seller on the other side (again as is customary in the aircraft sale industry). Additionally, Big Horn Exploration, LLC ("Big Horn") was incorporated by Bloom's state court counsel, Brad Rose, on October 1, 2014 See **Debtor's attached Exhibit E – Colorado Secretary of State Summary form**. Big Horn never held itself as an owner of any aircraft and was merely a very temporary conduit created to better facilitate the purchase and later sale of aircraft again as is commonplace in the industry.

3

12) Defendant admits the allegations contained in Paragraph 15 of the Complaint.

13) Defendant admits the allegations contained in Paragraph 16 of the Complaint specifically as it relates to the $68,000 of air worthy items in need of attention but such did not contradict any previously provided information from Bloom or BBJ to Glencove.  Bloom represents that the existence of multiple air worthy items in need of repair prior to a final sale of an aircraft is very common in the industry and that such repairs are commonly and extensively addressed and negotiated among the parties prior to closing.  Glencove's Exhibit 20 specifically cites to Bloom's continuing efforts to get Loretta down on the sales price, this time due to the less than new condition of the interior.  Glencove's Exhibits 21-22 is from Tracy Wirth a customer service manager at Haggan Aviation communicating with Bloom the costs of repairing the Hawker's batteries as is also common in the industry.  Per Glencove's Exhibit 23, Bloom replies to Haggan that the buyers "want answers" as to the conditions and terms of fixing the airworthy items.

14) Defendant DENIES the allegations contained in Paragraph 17 of the Complaint.  Additionally, Bloom will testify that he told Jennifer and Huw Pierce that the seller was refusing to repair the items deemed airworthy at the price Glencove wanted the Hawker aircraft for.

15) Defendant admits the allegations contained in Paragraph 18 of the Complaint except that there was no scheme to defraud Glencove.

16) Defendant DENIES the "willful and malicious" and "false pretenses" and "false representations" fraud related allegations contained in Paragraph 19 of the Complaint.

17) Defendant DENIES the allegations contained in Paragraph 23 of the Complaint (there are no Paragraphs 20-22 cited in the Complaint in an apparent typo) in that there was no "scheme" to defraud Glencove.

18) Defendant DENIES the allegations contained in Paragraphs 24-25 of the Complaint.  Glencove repeatedly fell into arrears with regard to its operating account, which Bloom had to continuously remind Glencove to get caught up on payments.  See **Debtor's attached Exhibits F-L – emails dated November 24, 2015; January 28, 2016; February 8, 2016; February 17, 2016; February 19, 2016; February 20, 2016; and February 24, 2016 between Bloom and Jennifer/Huw Pierce.**  See further **Sources and Uses of Funds invoice from October 2015 to May 2016 showing that Glencove was "under water" as to cash flow funding the operating costs of the plane consistently from the onset (except for the positive balances for January 2016 and February 2016) attached as Debtor's Exhibit M.**

19) Defendant admits the allegations contained in Paragraph 26 of the Complaint.  Bloom and BBJ did not assume any of the aircraft repairs that Glencove ultimately paid for toward *its* now purchased aircraft.  While BBJ did resubmit all invoices and backup documentation previously generated during the period it managed the aircraft, it did so at the specific request of Glencover's counsel.

20) Defendant DENIES the allegations concerning illegality contained in Paragraph 27 of the Complaint.  As Glencove's operating account continued to be woefully deficient by the stated

4

$48,131.65, Bloom and BBJ lawfully exercised their rights under Texas state law by putting a lien on the aircraft until the deficiency was cured. Subsequent amendments to the lien were recorded principally as Glencove paid vendors directly, thereby decreasing BBJ's financial obligations.

21) Defendant admits the allegations contained in Paragraphs 28-32 of the Complaint.

### IV.     FIRST CLAIM OF RELIEF: 11 U.S.C. § 523(a)(2)(A)

22) Defendant admits the allegations contained in Paragraphs 34-35 of the Complaint.

23) Defendant DENIES the allegations contained in Paragraphs 36-40 of the Complaint. Bloom did not obtain money from Glencove based on any false pretenses, a false representation or actual fraud as contemplated by 11 U.S.C. § 523(a)(2)(A). Bloom's relationship with Glencove was that of an independent agent and, by express contractual relationship per the Agency Agreement, no "partnership, agency, joint venture or employment" relationship was created between the two parties. Glencove's allegations here and also in the Proof of Claim misleadingly give the impression that the $250,000 difference went entirely to Bloom/BBJ but this is not accurate. $29,633.66 went to attorney Brad Rose for legal services provided, $90,000 to Aircraft Finance Corp. (which helped Glencove barely be able to afford finance the aircraft) and $22,000 attributable to seller proceeds. **Debtor's attached Exhibits N & O – September 28, 2015 email summarizing this breakdown from Angie Risley at Haggan Aviation and also August 31, 2015 Haggan Aviation Proposal for Work outlining all required maintenance and necessary airworthy and other repairs**.

Perhaps most important in this case is the fact that **Glencove sustained no damages**. See **Debtor's attached Exhibit P – November 30, 2015 Appraisal** conducted by Steven W. Bloom appraising the Hawker 2004 800XP at a Fair Market Value (FMV) of $3,697,399. (Bloom will testify as the concerns he expressed with Jennifer Pierce in a November 2015 phone conversation as to a conflict of interest with the appraisal not being done by a third party but that he still went through with the appraisal because Jennifer Pierce "begged him" to and said that "she would cry" if he did not do the appraisal. See also **Debtor's attached Exhibit Q – July 12, 2017 www.aircraftbluebook.com valuation** listing the Average Retail Price of a Hawker 2004 – Hawker 800 XP at a FMV of $3,760,470.50, again considerably OVER the purchase price for the deal at issue.

Additionally, the transaction in question in commonly referred to in the aircraft sale industry as a **"Back-to-Back" aircraft transaction**. See **Debtor's attached Exhibit R – National Business Aviation Association (NBAA) Member Resource article dated August 2, 2010** outlining the anatomy and specific issues commonly seen with Back-to-Back aircraft transactions. In a "back-to-back" transaction, the aircraft is not sold directly by the seller to the buyer, but instead is sold through an intermediary (acting as interim buyer and seller) to the end-buyer. Typically, the Buyer agrees with a broker that the Buyer will purchase an aircraft of a specific type for a predetermined price, and the broker is then free to procure a qualifying aircraft and earn the equivalent of a commission by securing a lower purchase price from a Seller. If successful, both the Buyer and Seller meet their transaction goals.

In this case, a back-to-back aircraft transaction lawfully prevented independent agent Bloom and BBJ from Glencove from going behind Bloom's back, directly contacting seller Loretta, and then essentially trying to rip Bloom off by cutting him completely out of the deal.  Additionally, an expert such as Bloom is not "dead weight" to such a deal as has 30 years of professional expertise in the aircraft industry advising various buyers and sellers of aircrafts.  Bloom will testify that he has sold over one hundred (100) aircraft with roughly thirty (30) of these being Back-to-Back transactions, without any complaint prior to the case at bar.  **See Debtor's attached Exhibits S & T – Resume/CV and Professional Biography for Steven W. Bloom**. Bloom's expert witness will testify as to the commonality and widespread industry acceptance of Back-to-Back aircraft transactions.

### V.    SECOND CLAIM OF RELIEF: 11 U.S.C. § 523(a)(6)

24) Defendant admits the allegations contained in Paragraphs 42-43 of the Complaint.

25) Defendant DENIES the allegations contained in Paragraphs 44-47 of the Complaint.  Bloom did not cause any willful and malicious injury to Glencove as per 11 U.S.C. § 523(a)(6) consistent with the aforementioned reasons stated in Section IV of this Answer.  Bloom's relationship with Glencove was that of an independent agent and, by express contractual relationship per the Agency Agreement, no "partnership, agency, joint venture or employment" relationship was created between the two parties.  Contrary to Glencove's assertions, Bloom had no affirmative duty to disclose each and every aspect of his dealings with seller Loretto.

If sustained, Glencove's claim would effectively wipe out financially an independent agent like Bloom whose marketability is determined by his very specific expertise in brokering these types of aircraft transactions.  Glencove now essentially wants to "have its cake and eat it too" by completely invalidating through the judicial system Bloom's contractually agreed to agent fee, the "Back-to-Back Transaction" difference between the amount the aircraft was bought and then later sold for, and any other costs and repairs incurred all the while with Glencove and the Pierce's keeping the underlying aircraft and full extravagances it offers.

### AFFIRMATIVE DEFENSES IN FAVOR OF DEFENDANT

A) Failure to State a Cause of Action per FRCP 12(b)(6) as Glencove sustained <u>no damages</u> having paid well under Fair Market Value (FMV) for the aircraft in question.
B) Setoff/Recoupment in favor of Steven Bloom and against Glencove.
C) Equitable Doctrine of Waiver.  Glencove continues to this day to fully accept the benefit of the bargain it received as it has retained and regularly uses the aircraft.
D) Equitable Doctrine of Estoppel.
E) Equitable Doctrine of Laches.
F) Equitable Doctrine of *Caveat Emptor* particularly as Glencove was represented by Texas aviation counsel throughout the purchase process.
G) Fraud by Glencove and Huw/Jennifer Pierce against Steven Bloom/BBJ.

## COUNTERCLAIMS AGAINST PLAINTIFF

A) Glencove breached contract with Bloom/BBJ thereby causing damages to Bloom/BBJ.
B) Glencove is liable to Bloom/BBJ for punitive damages and attorneys fees/costs for bad faith breach of contract and for frivolous litigation.
C) Glencove continues to owe Bloom/BBJ restitution for unjust enrichment for additional monies in materials and labor contributed towards the aircraft in question.

WHEREFORE, Defendant Steven W. Bloom respectfully requests that Plaintiff Glencove's Complaint be denied in its entirety, that judgment as to full dischargeablity be entered in Bloom's favor, that any claims or counterclaims Bloom has against Glencove Holdings, LLC and Huw/Jennifer Pierce be fully preserved, that reasonable attorneys fees, costs and sanctions be awarded to Bloom and against Glencove Holdings, LLC and Huw/Jennifer Pierce, and for all other just and appropriate relief.

Dated this 17th day of July 2017

/s/ David M. Serafin
David M. Serafin, #33686
3773 Cherry Creek Dr. N., #575
Denver, CO 80209
(303) 862-9124
david@davidserafinlaw.com

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the 18th day of July 2017, I served a copy of the foregoing DEFENDANT STEVEN W. BLOOM'S ANSWER by mailing a copy by U.S. Mail, postage pre-paid, to the following:

Adam L. Hisch, Esq.
Kutak Rock, LLP
Atty. for Glencove Holdings, LLC
1801 California St., Ste. 3100
Denver, CO 802020

/s/ David M. Serafin