# EXHIBIT 8



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft**
**transactions, aircraft purchase agreements and**
**airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

_____

**BLOOM BUSINESS JETS, LLC v GLENCOVE HOLDINGS, LLC**

**2016cv30114**
*Court reference number*

_____

Final report of Jason Zilberbrand for the District Court, Pitkin County, Colorado

_____

Dated March 13th, 2019

Specialist field:                    General aviation aircraft valuations and
                                     appraisals, aircraft transactions, aircraft purchase
                                     agreements and airframe/engine hourly programs.

On behalf of the Plaintiff:          Bloom Business Jet, LLC

On the instructions of:              Brad Rose of Rose Law, LLC and Gary Evans of
                                     Coats & Evans P.C.

Subject matter:                      On the matter of whether back-to-back
                                     transactions are common place in general aviation
                                     transactions, including this specific transaction
                                     with regards to this specific dispute.

Jason Zilberbrand
4560 Eleanor Drive
312-961-0934
Jason@vref.com



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**                          aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

## Contents

| Paragraph Number | Paragraph Contents | Page Number |
|---|---|---|
| 1 | Introduction | 3 |
| 2 | The issues addressed and a statement of instructions | 5 |
| 3 | My investigation of the facts | 6 |
| 4 | My opinion | 12 |
| 5 | Statement of compliance | 19 |
| 6 | Statement of conflicts | 19 |
| 8 | Statement of truth | 19 |

**Appendices**

| | | |
|---|---|---|
| 1 | My C.V. | 21 |
| 2 | List of documents that I have examined | 22 |
| 3 | Details of any literature or other material I have relied upon in making this report with copies of important extracts. | 24 |
| 4 | Chronology | 41 |
| 5 | Glossary of technical terms | 42 |
| 6 | Expert Witness Engagement Letter | 45 |
| 7 | Expert Witness Invoices | 48 |
| 8 | Expert Witness Previous Cases | 51 |



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

## Report

### 1    Introduction

### 1.01   The writer

I am Jason Zilberbrand. My specialist field is general aviation and I have been in the general aviation industry for 25 years. I have been a broker and inventory aircraft dealer for 15 years and have acquired and sold over 4 billion dollars in aircraft assets.

Full details of my qualifications and experience entitling me to give expert opinion evidence are in appendix 1.

### 1.02   Summary background of the case

The case concerns the purchase of a 2004 **Hawker 800XP business jet** that was sold to Glencove Holdings, LLC and Huw and Jennifer Pierce by Big Horn Exploration, LLC owned by Bloom Business Jets, LLC in 2015. There is a chronology of the key events in appendix 7. I have been instructed to provide expert witness testimony with regards to the validity of back-to-back transactions in general aviation and whether or not they are customary in practice in the industry.

### 1.03   Summary of my conclusions

This Rule 26 report will show that in my professional opinion back-to-back transactions are common place and is an accepted transaction type in general aviation, specifically business jets.

### 1.04   Those involved

Those involved in the case are as follows:

Bloom Business Jets, LLC is the broker of record, management company of the aircraft for the Pierce's;

Steve Bloom is the Principal of Bloom Business Jets, LLC;

Trustone Financial Federal Credit Union is the seller of Hawker aircraft to Glencove Holdings, LLC;

Brad Rose is the lawyer for Bloom Business Jets, LLC and Big Horn

3



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

Exploration, LLC;

Glencove Holdings is the purchaser of Hawker aircraft from Trustone Financial Federal Credit Union;

Huw and Jennifer Pierce are the members of Glencove Holdings, LLC and the purchasers;

IATS (Insured Aircraft Title Service) is the escrow company;

Haggen Aviation is the pre-buy facility and **MRO** (Maintenance Repair and Overhaul facility);

Loretto Aviation is the Seller of the Hawker aircraft to Trustone Financial Federal Credit Union;

Fred Cei is the Executive Vice President of Sales for JFI Jets representing the Seller Loretto Aviation;

Ronald Werner is General counsel for Seller Loretto Aviation;

Gary Evans is the lawyer for Bloom Business Jets, LLC;

Martin Orman and Aircraft Finance Group were the original potential lenders of the aircraft for Glencove Holdings, LLC;



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**                            aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

**1.05    Technical terms and explanations**

I have indicated any technical terms in **bold type**. I have defined these terms when first used and included them in a glossary in appendix 5. I have also included in appendix 3 extracts of published works I refer to in my report.

**2.0    The issues to be addressed and a statement of instructions**

**2.01**    I was instructed to provide a thorough written opinion as to whether or not back-to-back transactions are common place in general aviation, including this specific transaction with regards to this specific dispute as to whether or not the transaction was consistent with back to backs that are common place in the industry. The materials provided consisted of email correspondence, draft letters of intent, signed and counter signed letters of intent, draft purchase agreements, signed and counter signed aircraft purchase agreements, escrow and wire instructions, pre-buy invoices, work orders, discrepancy lists, unairworthy items, and management agreement drafts and final signed and counter signed management agreements.

**2.02    The purpose of the report.**

**2.03**    The following represents my opinion in the matter of Bloom Business Jets, LLC v. Glencove Holdings, LLC. It is based on review of materials submitted to me by Coats & Evans P.C., my experience with aircraft transactions in the past, my education, experience and training as an aircraft broker, and my experience selling aircraft, drafting aircraft purchase agreements, as



Report by Jason Zilberbrand
Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,
                   aircraft purchase agreements and airframe/engine hourly programs.

On behalf of the Plaintiff: Bloom Business Jets, LLC.

well as my knowledge of aircraft transactions and customary details of aircraft resale transactions. I reserve the right to amend this report if other evidence becomes available.

## 3    My investigation of the facts

I have reviewed the following facts:

1. The original claim was provided by Plaintiff's counsel.

2. The Bloom Business Jets, LLC and Pierce Agent Agreement as provided by Plaintiff's counsel. I investigated the language in the agreement and made comments regarding the agreement. I compared this agreement to other agreements used for similar aircraft acquisitions by other brokers.

3. The Big Horn Exploration, LLC aircraft purchase agreement with Loretta Aviation, LLC the seller. This agreement was provided by the Plaintiff's counsel and I made comments regarding the back-to-back transaction. The aircraft purchase price was $3,300,000.00. The seller agreed to cure certain repairable deficiencies as discovered by the pre-buy. Seller had risk of loss until aircraft was re-sold at closing. All discrepancies that would be considered **Airworthy** were carved out as being the responsibility of the seller to cure prior to delivery and acceptance of the aircraft.

4. The appraisal was provided by Plaintiff's counsel. I investigated the accuracy of the appraisal, researching whether it met **USPAP** standards in appraising. The appraisal identified current **fair**

6



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

**market value** and its definition, the condition of the aircraft, the interior and exterior were found to be in good original condition, no damage history was located or found, and the aircraft was on maintenance programs called **MSP**. The appraisal called for a Current **Fair Market Value** of $3,697,399.00 USD and this appraisal is similar to other NAAA appraisal reports I have reviewed.

5. All emails provided by Plaintiff's counsel were reviewed, along with Exhibits 1-15 as provided by Plaintiff's counsel. Exhibit 1 was an introductory email by Bloom to the Pierce's offering his brokerage services. Exhibit 2 was an email outlining the aircraft Bloom believed to be the best fit for the Pierce's **mission profile**. Exhibit 3 outlines the aircraft Bloom is recommending to the Pierce's to purchase which is a low time Hawker 800XP that can be purchased within the buyers budge below $4,000,000.00 USD. Bloom states the paint and interior are needing to be re-done and outlines the fees associated with the work as a generalized budget. Exhibit 6 is an email from Jennifer Pierce stating her "excitement" regarding the Hawker 800XP and again states it needs to be under $4,000,000.00 USD. Exhibit 8 dated August 7, 2015 is from Bloom to Huw and Jennifer Pierce stating the market conditions, the typical values associated with Hawker type aircraft, and how Serial Number 258697 meets all of the mission profile and purchaser requirements, outlined in the Agent Agreement between Bloom Business Jets, LLC and the Pierce's.



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

Exhibit 11 is an email from Jennifer Pierce stating, "not to mess around" and "just to get it done". Bloom responds stating to be patient and allow him to do his negotiating. Exhibit 13 is the request for deposit by Bloom to Jennifer Pierce. Exhibit 15 Bloom asks IATS to keep the buyer confidential if the seller asks for it.

6.  The Pierce Hawker Management Services Agreement was provided by Plaintiff's counsel. Comments made demonstrate that the Pierce's failed to fund the entire amount due per the Agreement per the terms signed by both parties. Bloom Business Jets, LLC was forced to fund the operations of the aircraft and wait reimbursement from the Pierce's.

7.  Glencove's original petition was provided by Plaintiff's counsel and reviewed. Comments made state the Aircraft Purchase Agreement had a no agency clause, and was "As Is, Where Is" with no warranty.

8.  Other emails as provided under the category of supplemental document production and discovery were reviewed as provided by Plaintiff's counsel. On 8/4/15 Jennifer Pierce asks Bloom what number a "steal" on the Hawker is, and on 8/7/15 Jennifer Pierce instructs Bloom to send offer on the aircraft.

9.  The email requesting the aircraft appraisal for financing was provided to me by Plaintiff's counsel and reviewed. Bloom provided Trustone Financial Federal Credit Union Financial a copy of the appraisal with the current fair market value of $3,697,399.00 USD and the back up to the value based on market research which is in line with NAAA guidelines.



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**                        aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

10. Articles from, AIN, Avbuyer.com, NBAA, Wiley Rein PLC, and Business Jet Traveller were obtained through google searches and reviewed for content. These articles all outline the fact that Back-to-back transactions occur often in general aviation and for numerous reasons. Wiley Rein states that one of the following reasons may require a back-to-back:

    a. Corporate Mandate.

    b. Reselling a new aircraft position prior to delivery.

    c. Culture.

    d. Opportunistic Intermediary.

    e. Buyers confidentiality.

In a corporate mandate, Wiley states a seller might not be worried about getting top dollar for the aircraft, and simply want it sold for a specific price. In this case, a re-seller or the broker can keep the spread between what was negotiated with the seller and the buyer.

When re-selling a new aircraft position prior to delivery, it is common for a single purpose entity to be created to allow the assignment of the purchase agreement to a buyer without the need of amending the original aircraft purchase agreement.

The culture of or accounting practices of a foreign buyer create the need for a back-to-back, as it may be against culture to pay a commission to the broker, or a



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**                          aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

buyer may require the entire transaction inclusive of fees without a break out of commissions to be used for accounting and tax purposes.

The opportunistic intermediary identifies an aircraft that can be purchased for a lower amount than what has been negotiated with the buyer. The back-to-back is used to keep the intermediary in the transaction, and in the event of a buyers default all obligations to purchase the aircraft would be to the intermediary.

At some point prior to closing and in cases of buyers requiring financing it occurs earlier in the transaction, the buyer's identity must be disclosed to meet Know Your Customer requirements, Patriot Act obligations and **International Registry** requirements.

3.01   **Documents**

*The important documents for review are:*

1. *150825 N137LA APA BHE executed*
2. *150806 Bloom Pierce Agent Agreement*
3. *N137LA Appraisal*
4. *Pierce Hawker Management Services Agreement*
5. *Big Horn Exploration, LLC  1-53*
6. *Bloom 000500-000530*
7. *Haggan 1-109*
8. *ROSE 1-77*
9. *Bloom Work Order from Haggan*
10. *Exhibit 1*



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions,**
**                          aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

11. *Exhibit 2*

12. *Exhibit 3*

13. *Exhibit 6*

14. *Exhibit 8*

15. *Exhibit 11*

16. *Exhibit 13*

17. *Jennifer Pierce emails: August 4th, 2015 and August 7th, 2015*

18. *Bloom email to Trustone Financial Federal Credit Union Financial*
    *September 22nd, 2015*

*Report of* Jason Zilberbrand
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** the **Plaintiff** Bloom Business Jets, LLC.

3.02   **Research**

In my research I reviewed several articles regarding back-to-back transactions in general aviation. The first article was authored by aircraft broker Jay Mesinger and appeared in Aviation International News March 1, 2018. The second article was a newsletter published by law firm Wiley Rein LLP in April 2011. The third article was published in the National Business Aviation Association website in August 2010 by Alan Burnett from the Aviation law firm CenterPoint Aviation Law PLLC. The fourth article reviewed was published in Business Jet Traveller in December of 2008 by Jeff Weiand an aircraft broker. I also conducted research into the escrow companies that specialize in aviation transaction and reviewed the Aerospace Reports Escrow Services website with specific services offered for back-to-back transactions.

4      **My opinion**

It is my professional opinion that back-to-back transactions in general aviation, more specifically business aviation are common place. It should be noted that back-to-back transactions are complex in nature and high risk for all parties with the intermediary being responsible for many components to the transaction. Therefore, for a back-to-back aircraft transaction to be successful the intermediary, seller and end-purchaser would be required to agree to similar terms of the aircraft purchase agreement whereby the intermediary assumes 100% ownership in the event the end-purchaser defaults. By design, back-to-back transactions require some transparency as escrow companies, **International Registry**, and financial institutions must adhere to KYC (Know your Customer) and the Patriot Act to avoid issues with source of funds being from illegitimate sources.

*Report of* Jason Zilberbrand
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** the **Plaintiff** Bloom Business Jets, LLC.

During my research and analysis of facts, the matter of whether or not the back-to-back was common place was determined by going through each fact associated with the matter.

The significance of the Agent Agreement between Bloom Business Jets, LLC and Pierce should not be overlooked as it contains language outlining the relationship, roles and responsibilities of each party. It was the first agreement signed between the parties and became the working road map for the soon to be consummated aircraft purchase. In the agreement the facts supporting my opinion are clear. The first fact appears in Article 1 of the agreement that states the terms and conditions of the agreement. It states that the agreement is exclusive, meaning the purchaser must use the Agents services only, and it requires the Agent to locate a Hawker 800 or similar mid-size aircraft from a seller that is "ready, willing and able to transfer the unencumbered title to the aircraft to the buyer". This is an important fact as it does not state in the agreement that the Agent cannot also be the seller, nor does it prohibit the Agent from selling the aircraft to the buyer. Typically, if there is concern about transparency or disclosure of the parties it would appear as set term to the Agent Agreement. The Agent under this signed agreement was hired to provide its best efforts to locate an aircraft immediately available for sale under terms mutually agreeable to both the seller and the buyer, and it does not state that the aircraft should be commercially listed in the public domain for sale, or that it should be for sale direct from the owner of the aircraft. The Agent also had to assist in contract negotiations and assist in technical inspections of the aircraft during pre-purchase. The last obligation of the agent was to assist in the import of the aircraft if the aircraft purchased is not FAA registered. Bloom Business Jets, LLC fulfilled its obligations per the Agent Agreement. Additionally, the Agents obligations are specific and the language "use its best efforts" appears only once in the agreement with no definition or

*Report of* Jason Zilberbrand
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** the **Plaintiff** Bloom Business Jets, LLC.

defining terms. The question is whether this sentence was supposed to imply a fiduciary responsibility and it is impossible to interpret the meaning of this sentence as there is no definition and it does not appear anywhere else in the agreement. Furthermore, it is stated in Article 10 of the agreement that this agreement is bound by confidentiality. Lastly, there is a no agency clause in the Agent agreement, Section 9 of the Agent Agreement specifically states no employment, and that the relationship between the parties is nothing more than an independent agent and there is no partnership of any kind.

The Aircraft Purchase Agreement (APA) between Loretta Aviation the seller and Trustone Financial Federal Credit Union is a standard aircraft purchase agreement based on my experience in drafting and signing them. It is customary for the purchase agreement to contain specific language with regards to closing, the closing venue, the pre-purchase or pre-buy inspection that the seller will allow the buyer to conduct and the remedies associated with those inspections. It also outlines any contingency clauses or issues that might postpone or prevent a closing. Since a back-to-back transaction requires the intermediary buyer to take on all financial risks associated in the transaction should the real buyer not close or default it is critical that the intermediary acts in the best interest of the actual buyer in limiting the risks that might prevent the closing. Big Horn Exploration LLC in section 2.3, 2.4, 2.5 and 2.6 outline the pre-purchase inspection in great detail. The purchase agreement calls for an AS-IS transaction, and no warranty is implied or extended to the purchaser. The seller agrees to repair or cure all airworthy related items discovered in the pre-purchase and the intermediary agrees to pay the costs of the pre-purchase inspections. The default language is also specific in that if the buyer defaults the seller retains the deposit as damages. Therefore, the intermediary was at risk for the deposit and its loss if the transaction did not

**Report of** *Jason Zilberbrand*
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** *the Plaintiff Bloom Business Jets, LLC.*

close. Section 4.1 of the APA states the disclaimer of warranty and that the aircraft is purchased AS-IS with no warranties, expressed or implied or representations of any kind. It is worth noting, that this is the exact same language that appears in the APA between Big Horn Exploration, LLC and Glencove. The APA is important and plays a critical part in the transaction as Bloom had to agree to the same terms and mirror the purchase agreements so that the buyer and sellers' terms matched.  It is my opinion that if Glencove backed out of the transaction Big Horn Exploration, LLC had two options, the first would be to refund the deposit to the buyer and cure the remedy by breach of contract to the seller. The second cure would be to step into the shoes of the end buyer and purchase the aircraft for inventory purposes.

The Appraisal ordered by the financial institution was fulfilled by Bloom Business Jets, LLC. Steve Bloom according to his C.V. is a certified appraiser with the NAAA and ASA. Based on other appraisal reports I have reviewed and written, the appraisal ordered by the Trustone Financial Federal Credit Union Financial contained the minimum required language to be considered an opinion of value. Based on my opinion and my own valuation of the aircraft back at the time of sale, I determined that fair market value was a range between $3,100,000.00 USD and $3,800,000.00 USD in 2015, and the appraisal furnished to the financial institution supported the high retail market value of the aircraft backed by both a deposit and signed letter of intent to purchase. In my opinion, the financial institution should have ordered an independent appraisal of the aircraft to support its loan documentation, but nonetheless the appraisal **fair market value** and the purchase price are both within the range of what the aircraft was worth at the time it was purchased.

*Report of* Jason Zilberbrand
***Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements***
**On behalf of** *the* **Plaintiff** *Bloom Business Jets, LLC.*

In reviewing all the emails as provided by Plaintiff's counsel the time line and expectations of the transaction were communicated by both the Pierce's and Bloom. In Exhibit 1, we learn how Bloom came to make contact with the Pierces which was a cold call email. Bloom was provided the contact information from Aircraft Finance Group and it is customary in aviation for a lender to work with a broker or several brokers in lead generation and then share profits with shared commissions. In Exhibit 2, Bloom suggests the Pierce's should look at Citation Excel's and Hawker's and provides them with research and a list of available aircraft that Bloom determined met the needs of the Pierce's. Bloom protected the Pierce's by steering them away from aircraft with damage or aircraft based outside the USA, as a lender would have refused to lend until the aircraft was on USA soil.

In Exhibit 3 the Hawker SN 258697 is first introduced and it is this aircraft that Bloom suggests the Pierce's focus on. In fact, Jennifer Pierce tells Bloom that the purchase needs to be all in below $4,000,000.00 USD and that her excitement to purchase is increasing, and Bloom then explains in Exhibit 8 what the fleet of potential aircraft to purchase looks like, the pricing and the general state of the market. In Exhibit 11, Jennifer Pierce once again pushes Bloom to purchase the aircraft by stating "Just get it done and not mess around." Bloom responds by stating Pierce should be patient and let him negotiate. It is my opinion that Bloom did what he was asked by his client and did the required research in locating an aircraft. Although Bloom makes the first suggestion to buy the Hawker, at no time did he refuse to look at either aircraft and at no time did he imply this was the only aircraft that met their needs. The Hawker that was purchased met all specific requirements of the buyer, and its purchase price if $3,550,000.00 was well below the maximum amount the Pierce's wanted to

*Report of* Jason Zilberbrand
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** the Plaintiff Bloom Business Jets, LLC.

spend on an aircraft. It is my opinion Bloom met his written obligations and duties to the Pierce's.

During my research of back-to-back transactions, I searched the internet and spoke to several aircraft brokers. The internet searches provided a list of articles on the subject published by recognized or authoritative companies in general aviation. In the most recent article dated March 1, 2018, Jay Mesinger aircraft broker and President of Mesinger writes about back-to-backs as being a problem for title and escrow companies as they are forced to handle disputes if the deal goes south. In the matter of the Hawker that Bloom sold to the Pierce's there were no issues with escrow holding the deposit. I reviewed the Wiley Rein LLP newsletter that goes into great detail about the pitfalls of back-to-backs, and the difficulty in closing a back-to-back. They refer to the back-to-back as being identical to a "naked put" on wall street where an intermediary is often buying an aircraft with money he does not yet have and agreeing to sell an aircraft it does not own. It is my opinion that the seller was aware this was a back-to-back as the parties cooperated with the chain of title and the assistance of financing which requires transparency to meet KYC regulations. Wiley Rein states that a good escrow company will understand the sensitivities to a back-to-back and act in accordance with directions if the directions are clear and complete. It is my opinion that since all escrow companies are aware of what a back-to-back transaction is, including how to handle them as being sensitive that they are indeed common place and customary in general aviation aircraft purchases. Back-to-backs are so customary that escrow companies describe their ability to manage them in marketing language on their websites. In the Aerospace Reports Escrow company website, they state they complete 2000 transactions per year and can handle all your escrow needs including………back-to-back transactions. In reviewing the National Business Aircraft Association (NBAA) website, there

**Report of** *Jason Zilberbrand*
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** *the* **Plaintiff** *Bloom Business Jets, LLC.*

was an article written by Alan Burnett of CenterPoint Aviation Law PLLC, and it is titled Back-to-back Aircraft Transactions 101. NBAA is the governing body for business aviation, and it is an association most aviation professionals belong to. NBAA provides education seminars, and continuing education credits for aviation professionals as well as overseeing the semiannual international conventions that are attended. NBAA is considered an authority in aviation, and the article on back-to-backs is an introduction, and explanation of the transaction. The author concludes his article by stating "B2B aircraft transactions will and do occur in today's market." It is my opinion that NBAA supports mitigating back-to-backs but does not suggest they should be avoided or that they are rare.

In conclusion, it is my opinion that back-to-back transactions are common place and accepted in general aviation transactions, specifically business jet transactions. My opinion is supported by the fact that the Agent Agreement did not call for any specific type of transaction, nor did it carve out a back-to-back as being acceptable to the buyer. The Agent Agreement specifically calls out the obligations of both parties and while the words "use its best efforts" appear it is not defined, and it is my opinion Bloom met his obligations of the Agent Agreement and provided an aircraft suitable to the buyer. The **American Society of Appraisers** (ASA) defines **fair market value** as "An opinion expressed in terms of money, at which the asset would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts, as of a specific date."

It is my opinion that the purchaser was knowledgeable of relevant facts and was and acted as a willing buyer. Furthermore, back-to-back transactions are established as being acceptable in general aviation and are done so on a daily basis. A back-to-back transaction is both common place and customary

*Report of* Jason Zilberbrand
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** the **Plaintiff** Bloom Business Jets, LLC.

as acceptable types of transactions, and while they are complex in nature and require coordinated purchase agreements and terms, they can be completed with a high success rate.

**Statement of compliance**
I understand my duty as an expert witness is to the court. I have complied with that duty and will continue to comply with it. This report includes all matters relevant to the issues on which my expert evidence is given. I have given details in this report of any matters which might affect the validity of this report.

**Statement of truth**
*I confirm that I have made clear which facts and matters referred to in this report are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer.*

**Statement of conflicts**
I confirm that I have no conflict of interest of any kind, other than any which I have already set out in this report. I do not consider that any interest which I have disclosed affects my suitability to give expert evidence on any issue on which I have given evidence and I will advise the party by whom I am instructed if, between the date of this report and the trial, there is any change in circumstances which affects this statement.

**Report of** *Jason Zilberbrand*
**Specialist field: Aircraft transactions, brokerage, aircraft purchase agreements**
**On behalf of** *the* **Plaintiff** *Bloom Business Jets, LLC.*

March 12th, 2019

**Signature**......................................................................**Date**..........................

# JASON ZILBERBRAND

312.961.0934 jason@vrefpub.com

### PROFESSIONAL ACCOMPLISHMENTS

- Over 4 Billion in New and Pre-Owned Aircraft Sales
- 25-year career in General Aviation
- Expert in Asset Valuation, Engine Maintenance Programs and turbine engine storage/preservation, Power-By-The-Hour Programs
- Expert in Statistical Analysis of aviation assets and values.
- Expert in aircraft acquisition and resale including; contract and aircraft purchase agreements, pre-buy evaluations, and aircraft purchase structuring.
- Knowledge of diverse cultures gained through **international sales** experience and development of global team of sales representatives.
- Diverse background in database management, technology and SaaS development

### EMPLOYMENT HISTORY

**VREF Aircraft Value Reference & Appraisal Services,** Des Moines  IA      2018 – Current
President and CTO

- Oversee all day-to-day operations.
- Manages all software development and implementation
- Marketing and new business development.
- Website management, Social Media Management, SEO/SEM Management
- Oversee data analytics, data mining, and research.

**Aurum Jets,** Chicago, Illinois                                              2014 – 2018
President

- Directed all aspects of company with 8 employees and successfully opened multiple international offices in Russia, Ukraine and India. Completed over $50M in inventory purchases and sales.
- Managed all foreign government clients, and completed over two-dozen transactions involving distressed, repossessed or unairworthy assets.
- Active member of the aviation community with a specialty in valuation and market forecasting.
- Created numerous Trusts, and LLC's for aircraft purchase and strategic estate planning.

**The Jet Collection,** Chicago, Illinois                                      2004 – 2014
President

- Directed all aspects of company with 10 employees and $5M in annual net revenue as broker and dealer of aircraft with more than $2B in inventory. Overcame challenges such as economic downturns.
- Gained in-depth knowledge of running an international company; applied moral and ethical attributes to management of business in industry facing numerous obstacles.

- Managed pre-purchase inspections and contract negotiations.
- Oversaw effective branding of company, including marketing, advertising, and website design, introducing strategy that increased revenue 40%.
- Built international sales team with representatives in Turkey, Russia, India, France, Germany, UK, China, South America, Mexico, and Canada. Emphasized knowledge of aviation, culture, and language.
- Identified key qualifications in employees, including self-motivation, communication, and professionalism to build solid sales team with excellent closing skills.
- Coached and trained sales team in one-on-one sessions to improve sales skills and build knowledge of aviation market.

**Jet Support Services Inc. (JSSI),** Chicago, Illinois, and Detroit, Michigan        1994 – 2004
Vice President, Sales

- Built thriving territory consisting of 25 states for largest independent provider of hourly cost maintenance programs for turbine-powered aircraft; $200M revenue, 50 employees, and 250 new enrollments annually.
- Gained substantial sales experience and confidence. Earned rank of #1 representative, selling intangible assets with long lead times.
- Exceeded sales quota of 20 new enrollments annually from cold calls.
- Employed persistence over 5 years to close General Motors, leading to enrollments with Volkswagen, Ford, and Chrysler. Closed 80% of Detroit companies such as Compuware.
- Expanded aviation knowledge, gaining invaluable insight into industry from maintenance to operations in order to competently interact with targeted clients.

### ORGANIZATIONS

**Candidate Member of American Society of Appraisers (ASA)**

**Former National Aircraft Appraisal Association (NAAA)**
- Certified Aircraft Appraiser
- Expert Witness
- USPAP Certified

**Member of:**
**National Business Aviation Association**
**European Business Aviation Association**
**National Aircraft Finance Association**
**Helicopter Association International**
**USVSI**
**ISTAT**
**CBAA**
**Adjunct Professor with graduate level teaching experience**
**Proficient in Microsoft Word, Excel, PowerPoint, WordPress, and Adobe**
**Lifetime member of Franklin Honor Society**

### EDUCATION

**B.A., Psychology,** Roosevelt University, Chicago, Illinois, 1999
**Minor: Quantitative Statistics**
National Dean's List   ➤   GPA: 4.0   ➤   Benjamin Franklin Honor  Society

APPENDIX 2
DOCUMENTATION LIST

Bloom Business Jets, LLC/ Pierce Agent Agreement

Big Horn APA with Loretta

Outbound IATS wire Bloom Business Jets, LLC

Appraisal from Bloom Business Jets, LLC

Glencove Holding, LLC lawsuit

Pierce Management Agreement

Rose Law IATS wire

Exhibit 26

Discovery docs

positioning flight email Fred Cei 9/29/15 8:45:33am

Haggen Tracy Wirth Email 9/24/15 10:33am

Haggen work order estimate Big horn

Haggen pre-buy estimate Glencove

Haggen work order airworthiness 10/19/15

Bloom work order from Haggen

Final pre-buy Glencove invoice from Haggen

Haggen delivery invoice

Closing emails from IATS

lien email request to Millionair from Brad Rose

Exhibit 1
Exhibit 2
Exhibit 3
Exhibit 4, 5
Exhibit 6
Exhibit 8
Exhibit 11
Exhibit 13
Exhibit 15
Glencove original petition
160527 MKW response
invoice to Glencove Holdings for management services 11/03/15
Rent agreement
Notice of lien
Settlement agreement for Lien
Harger letter
Harger disclosures 160726
Email to Bloom from Jennifer Pierce 8/7/15
Email Jennifer Pierce to Bloom 8/4/15
Email Bloom to Jennifer Pierce 28 2016

APPENDIX 2
DOCUMENTATION LIST

Email Bloom to Trustone financial 9/22/15
Email Bloom negotiates the fuel price in Houston 10/2015
Bloom supplemental doc production

APPENDIX 3
SUPPORTING MATERIAL

- Escrow Services for Aero-Space Reports
- Back to back transactions Business Jet Traveler
- Back to back transactions 101 National Business Aircraft Association
- Back to back transactions Creative Solution's or Horrible Mess Wiley Rein
- Off Market opens door for Back to back transactions AIN Insight