# EXHIBIT 9



**Rebuttal Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft**
**transactions, aircraft purchase agreements and**
**airframe/engine hourly programs, aircraft management**
**agreements and aircraft management services.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

_____

**BLOOM BUSINESS JETS, LLC v GLENCOVE HOLDINGS, LLC**

**2016cv30114**
***Court reference number***

_____

Rebuttal report of Jason Zilberbrand for the District Court, Pitkin County, Colorado

_____

Dated April 15th, 2019

Specialist field:              General aviation aircraft valuations and
                                       appraisals, aircraft transactions, aircraft purchase
                                       agreements and airframe/engine hourly programs.

On behalf of the Plaintiff:    Bloom Business Jet, LLC

On the instructions of:        Brad Rose of Rose Law, LLC and Gary Evans of
                                       Coats & Evans P.C.

Subject matter:                Review and Rebuttal of Expert Witness Report by
                                       Mr. Johnny Foster (dated: March 15th, 2019)

Jason Zilberbrand
1411 McHenry Road, Suite 125
Buffalo Grove, IL 60089 USA
312-961-0934
Jason@vref.com



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft**
**purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

## Contents

| Paragraph Number | Paragraph Contents | Page Number |
|---|---|---|
| 1 | Introduction | 3 |
| 2 | Fails to support violations of utilizing a back to back | 3 |
| 3 | Fails to demonstrate breach of duties under Agent Agreement | 9 |
| 4 | Misinterprets role financing and KYC had in the transaction | 11 |
| 5 | Misapplies aviation definition of Fair Market Value | 12 |
| 6 | Misapplies Aviation Industry Guidelines | 14 |
| 7 | Conclusion of Rebuttal Opinion(s): | 15 |
| 8 | Statement of truth | 16 |
| 9 | Statement of compliance | 16 |
| 10 | Statement of conflicts | 16 |

**Appendices**

| 1 | My C.V. | 18 |
|---|---|---|
| 2 | List of documents that I have examined | 23 |
| 3 | Details of any literature or other material I have relied upon in making this report with copies of important extracts. | 24 |



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

### 1. Introduction

Following my subsequent review of the Glencove Expert's Report by Mr. Johnny Foster, President and CEO of OGARAJETS dated March 15th, 2019 that was sent to me as additional material for review, I have prepared the following rebuttal report.

### Summary of Rebuttal Opinion(s):

It is important to point out that the issue as to whether or not back to back transactions are common place in business aviation is never addressed in Mr. Foster's report. It is also equally important to point out that the issue that Mr. Foster's opinion on back to back transactions is stated to be *"proper and justified"* under limited circumstances. Mr. Foster's report addresses ethics, ethical behavior and uses three aviation associations as evidence to the fact that ethical behavior is standardized in the business aviation industry.

### Mr. Foster's Opinion is based on Fundamentally Flawed Methodology

There are a number of issues with Mr. Foster's methodology. Specifically, he:
1. Fails to support violations of utilizing a back to back;
2. Fails to demonstrate breach of duties under the Agent Agreement;
3. Misinterprets the role financing and KYC had in the transaction;
4. Misapplies an aviation definition of Fair Market Value;
5. Misapplies Aviation Industry Ethics Guidelines;

### 2. Fails to support violations of utilizing a back to back

Mr. Foster explains what a back to back transaction is but does not state why it would be used. In my initial report I went into great detail as to why a back to back would be required in an aircraft transaction. Those reasons may include a:
1. corporate mandate;
2. the reselling of a pre-delivery position prior to physical delivery;
3. the culture of the parties;
4. an opportunistic intermediary or;
5. to maintain the buyer's confidentiality;

Back to back transactions are common place and acceptable or in Mr. Foster's words *"proper and justified"* under these circumstances. Mr. Foster does not list nor explain



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

what those circumstances are, but many of the same organizations that Mr. Foster relies upon to support his opinion have all published articles in the past regarding how to either manage a back to back or accomplish one successfully. Furthermore, Mr. Foster misstates that *"back to back transaction violate industry's ethical guidelines when a broker, who is providing these services has signed an agency agreement…..*

> *1) disclose the identity of all parties involved in the transaction,*
> *2) fails to fully inform the actual end user buyer as to the reasons of the back to back structure,*
> *3) fails to obtain approval from the actual end-user buyer for the back to back structure or*
> *4) fails to inform the actual end user buyer of any and all financial gains he will realize due to the back to back structure."[1]*

In order to properly demonstrate how Mr. Foster has failed to realize his assumptions were incorrect we must address each assumed violation.

Bloom in fact did disclose all of the parties in the transaction. Mr. Foster states that full disclosure is required to not be in violation of a hypothetical set of industry standards for ethics in aircraft transactions. I use the word hypothetical, because nowhere does a set of standards exist in General or Business Aviation creating guidelines for an aircraft broker to act ethically. There are organizations within aviation that promote ethical behavior, and Mr. Foster does an excellent job at highlighting the National Business Aircraft Association's guidelines (NBAA) along with the National Air Transport Association (NATA) ethical guidelines, but fails to mention that they were not written specifically to address aircraft brokerage, nor were they intended to be regulatory standards, as aviation brokerage is unregulated. In fact, NBAA is nothing more than industry trade association that lobbies on behalf of the interests of private and corporate jet owners, and there are no accreditations earned, nor are there by-laws governing the behavior of its members.

The NATA is an advocacy group whose focus is to empower its members to be safe and successful, whose key mission is the Safety 1st mission promoting safety related resources. The NATA does not have any authority to create or set industry guidelines for aircraft transactions, there are no accreditations earned, nor are there by-laws governing the behavior of its members.

---

[1] Page 7 Conclusions and Opinions paragraph (1) Foster Expert Witness report

4



**Report by Jason Zilberbrand**
**Specialist field: General aviation aircraft valuations and appraisals, aircraft transactions, aircraft**
**purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

Mr. Foster also makes reference to International Aircraft Dealer Association (IADA) formerly known as the National Aircraft Resale Association (NARA) and implies that this organization sets industry standards and guidelines. Mr. Foster also provides a snippet of the entire Code of Ethics of IADA and does not provide the requirements to meet the IADA prerequisites on how to gain "accreditation".

IADA was formerly the National Aircraft Resale Association (NARA), a non-for-profit "*exclusive organization of the worlds most respected aircraft brokers/dealers and aviation products and service providers.*"[2] IADA is not a regulatory association, nor does it have the authority to set industry guidelines. IADA does have a strict Code of Ethics and does require "accreditation". The "accreditation" process and requirements are posted on their website[3] and are included in this report. It is worth mentioning that Mr. Foster's position in IADA was the former Chairman of the Board from 2013-2015 and that he would have access to the data and statistics to support the statements made in the IADA marketing materials and his report. These statements include that IADA members represent only 3% of all aircraft dealers. It also states that IADA members are responsible for over 60% of the global pre-owned aircraft sales transactions. According to **JetNet Evolution**[4] a SaaS (Software as a Service) company offering data and analytics to the aviation industry reports that the IADA members are responsible for only 16.25% of the global aircraft transactions. (See Appendix)

Furthermore, the requirements to be an accredited IADA dealer state every dealer must:

1. Be in business for a minimum of five (5) years.
2. Average a minimum of ten (10) transactions per year.
3. Be recommended by three (3) current IADA Dealers. See the complete list of IADA Dealers here.
4. Sign the IADA Code of Ethics annually.
5. Be approved for Membership by a majority of IADA Dealers
6. Have a minimum of three Brokers in your firm. At least 50% of your Brokers must achieve IADA Certified Broker status within 12 months of you becoming an IADA Member.
7. Agree to list your inventory of aircraft on AircraftExchange.com
8. Carry a minimum of $1M Liability and $1M E&O insurance
9. Have a non-residential office of a minimum-specified size.

---

[2] Naraaircraft.com Way Back machine Internet Archive January 2013 snapshot
[3] Iada.aero
[4] http://www.jetnetevolution.com



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

10. Complete annual ethics and compliance training.
11. After accreditation, agree to retain the following data for five (5) years: 1) Listing/Acquisition Agreement, 2) Aircraft Specifications, 3) Letter of Intent (LOI) and Amendments, and 4) Purchase Agreement and Amendments.

In my research of IADA "accreditation" requirement number 2 that each member must close a minimum of 10 transactions per year I discovered unreliable facts. According to JetNet Evolution, I discovered that out of the current 31 members of IADA only 19 meet those minimum requirements as demonstrated in my Appendix. Furthermore, the IADA "accreditation" requirement of number 9 to have a non-residential office of a minimum size is breached by the organization itself, as according to the 2018 Florida Not for Profit Corporation Annual Report the IADA place of the business is located at a residence at the location of 1103 Elmgrove Lane, Keeler Texas 76092. [5]

Furthermore, Mr. Foster states in his own C.V. that he has completed 650 transactions since taking over as President of OGARA in 2005, yet JetNet Evolution only reports a total of 65 transactions over this same period. Furthermore, Mr. Foster was interviewed in Avbuyer magazine[6] where he states he was named the President of OGARA in 2006, which is different from his own supplied C.V. Additionally, in Business Aviation Magazine, Mr. Foster is quoted as stating *" In terms of unit counts we were down in 2018 compared to 2017…..we build out budgets around the goal of completing 30 transactions per year. We increased it by 10 percent in 2019."* [7]

These errors along with the lack of supporting documentation indicates the report of Mr. Foster contains data that is unreliable.

It is worth noting that the current sitting Treasurer of IADA is the CFO of Jetcraft, Mr. Peter Antonenko, the number 3 ranked brokerage firm in the USA according to JetNet Evolution, and they have completed 65 transactions in the last 12 months. Furthermore, as provided in my Appendix, Jetcraft has been involved in lawsuits and named in the Zetta Jet Bankruptcy[8]. The Zetta Jet case is of interest with regards to Bloom v. Glencove as Mr. Foster's opinion is that IADA is *"an industry leader in developing standards for efficient, effective, and ethical aircraft transactions, requires under its*

---

[5]https://www.google.com/maps/place/1103+Elmgrove+Ln,+Keller,+TX+76248/data=!4m2!3m1!1s0x864dd658eb6fb09d:0x4ab8f1c786dd6609?sa=X&ved=2ahUKEwjlh_jdqNLhAhUCA6wKHexoDaYQ8gEwAHoECAcQAQ
[6] https://www.avbuyer.com/articles/market-insight/where-is-business-aviation-heading-in-2019-112330
[7] http://online.anyflip.com/yosh/czrg/mobile/
[8] United States Bankruptcy Court Central District of California Los Angeles Division Case No. 2:17-bk-21387-SK



Report by Jason Zilberbrand
Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft
purchase agreements and airframe/engine hourly programs.

On behalf of the Plaintiff: Bloom Business Jets, LLC.

_Code of Ethics that, among other things, that all members….._

> _(1) shall create and maintain a reputation for honesty, integrity and
> transparency and shall adhere to the highest ethical standards in their dealings;
> (2) when acting as an exclusive agent for an exclusive buyer or seller, shall
> not accept commission from more than one party to a transaction without the
> full knowledge of the principal(s) of the transaction;
> (3) shall avoid exaggeration, misrepresentation or concealment of all known
> pertinent facts relating to the transaction; and
> (4) shall reveal their true ownership or interest in any aircraft they represent to
> the purchaser or his/her representative."_

Clearly, Mr. Foster contradicts himself as not only has he misrepresented pertinent facts
about himself and his firm, but the Jetcraft suits and filings as supported in the motion
filed identified as Doc 7, paragraph 12, lines 4-13 of 9/19/17 in Federal Court, where
Jetcraft is accused of illegal kickbacks[9],

> _"In 2015, Mr. Cassidy, in his capacity as an officer of Zetta Jet, purchased seven
> (7) Bombardier Global Express aircraft from a company called Jetcraft and is
> alleged to have made secret deals with the Jetcraft broker for illegal kickbacks of
> approximately $2 million USD for each aircraft purchased. Later, in 2017, Mr.
> Cassidy ordered seven (7) more Bombardier jets from Jetcraft with similar
> alleged illegal secret kickbacks. Zetta Jet estimates that these alleged illegal
> kickbacks, in the aggregate, represent between $14 million USD and $18 million
> USD of assets and/or opportunities misappropriated from Zetta Jet."_

In an article published in Forbes[10] about NARA, the former name of IADA as published
on the Forbes website in June of 2016 states that _"Aircraft brokers generally do not
need to adhere to any standards of ethical conduct. Unlike licensed real estate brokers,
aircraft brokers can operate outside the rules or without any rules."_

This article is important because Mr. Foster is the key contributor and his photo appears
alongside a client. The article goes on to state and contain a quote from Mr. Foster that
_"Additionally, they (NARA) commit to avoid exaggeration, misrepresentation, or
concealment of pertinent facts relating to an aircraft transaction while keeping with the_

---

[9] https://www.omnimgmt.com/CMSVol2/pub_47213/643967_7.pdf
[10] https://www.forbes.com/sites/businessaviation/2016/06/28/where-do-you-start-when-buying-an-airplane/#4bffd9693109



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft**
**purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

---

*"highest standards of business and professionalism."* The article continues with another quote from Mr. Foster that *"Every NARA member agrees to create and maintain a reputation for honesty, integrity and transparency and adhere to the highest ethical standards in their dealings."* These statements are exaggerations and clearly not supported by the findings in my rebuttal report.

Furthermore, in addition to Jetcraft and OGARAJETS mispresenting themselves, exaggerating facts and in Jetcraft's case accepting kickbacks which clearly violate the IADA Code of Ethics, the brokerage firm Corporate Fleet Services, LLC (CFS) has also violated the same IADA Code of Ethics. This is important as it establishes a pattern of non-compliance to the Code of Ethics that these firms all govern as both members of IADA and board members of IADA.

In the case of CFS the firm is listed as the number 4th ranking firm in terms of transaction volume according to JetNet Evolution. They completed a total of 56 transactions in the last 12 months. As an IADA member they not only agree and sign their (IADA) own Code of Ethics, but the President of CFS is Mr. Mitch McCune who is also a sitting board member of IADA. This means that McCune has some say via a vote as to what policies are set, and more importantly who is allowed to be a member even after meeting the "accreditation" requirements.

In the IADA Code of Ethics, the 4th code of conduct is: **(4)** *shall reveal their true ownership or interest in any aircraft they represent to the purchaser or his/her representative.* CFS according to JetNet Evolution as well as through my own research has been conducting back to back transactions for years through various subsidiaries. In fact, the company has gone to extreme lengths to disguise these transactions[11], as a number of them were completed via a subsidiary company called JetZone, LLC. JetZone is owned by Jason Leavelle the current COO of CFS and the former founder and President of Express Jets which was acquired by CFS in 2018. Based on my own research, I have discovered that JetZone is used to acquire aircraft and then resell them as an intermediary via a back to back. This activity is continuous based on the history of closings available in JetNet Evolution (See Appendix), and therefore CFS is in breach of their own Code of Ethics and furthermore demonstrates unethical practices committed by numerous members of an association.

---

[11] See Appendix for transaction list



**Report by Jason Zilberbrand**
**Specialist field: General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

In my review of this information and Mr. Foster's biography along with the exaggerations in the reported historical transactions by both IADA and Mr. Foster that they (IADA) portray compliance to a self-governed Code of Ethics only when it does not impair or create issues with generating revenue and selling aircraft for IADA members or when it is convenient to utilize IADA membership as an obstacle preventing competitors from access to IADA as a paying member. Mr. Foster in terms of his personal achievements contained in his report and C.V. contradicts the same Code of Ethics and IADA's "authority" regarding aircraft transactions is nothing more than a "club" offering marketing, and networking support in exchange for an annual membership fee. It is my opinion that IADA has no impact on either the ethics or standards established in the industry to oversee aircraft transactions and based on the review of numerous legal cases it is fact that these requirements to maintain membership in IADA only apply at keeping certain candidate members out, as there is no guarantee of "accreditation" even if one meets all the requirements and prerequisites because the board has the final approval of who can be a member.

I have established unethical patterns of behavior from numerous IADA members and board members which indicate that IADA's Code of Ethics is a pure marketing campaign or attempt to bring comfort to people who engage in business activities with IADA members.

These activities highlight that the lack of ethics runs deep in the association, is part of their culture and the behavior reaches all the way to their board as well.

After reviewing the C.V of Mr. Foster's as provided by Mr. Foster I cannot find any accreditations nor are there any indicated outside of his degree(s) from Colorado State University.

## 3.    Fails to demonstrate breach of duties under Agent Agreement

Mr. Foster makes note that he reviewed the Agent Agreement and that he was to provide services under the agreement in a *"professional manner consistent with the applicable industry standards."*

Mr. Foster fails to provide a definition for industry standards, but he does state that Bloom received a flat fee commission under the Agent Agreement. The Agent Agreement is a critical component to the claim as it outlines specific duties for each party. Upon my review of the Agent Agreement I found that Bloom did not breach his duties as no fiduciary relationship is ever implied, and in fact the term "use best efforts"



**Report by Jason Zilberbrand**
**Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft**
**purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

appears just once in the agreement and no definition is provided. The question is whether this sentence was supposed to imply a fiduciary responsibility and it is impossible to interpret the meaning of this sentence as there is no definition and it does not appear anywhere else in the agreement. Furthermore, it is stated in Article 10 of the Agency Agreement that this agreement is bound by confidentiality. This confidentiality clause is one of the reasons why a back to back transaction would be considered. It is important to note and highlight that confidentiality with regards to the agreement would be upheld except when required by a financial institution, lender, lawyer or accountant and that Bloom did in fact disclose the end buyer at the appropriate time during the normal course of business to insure the lender TruStone could indeed conduct its **Know Your Customer**[12] (KYC) and compliance of the borrower. Furthermore, TruStone must have proof of chain of title and clear title as does Escrow, so disclosure was a matter of timing in the transaction.

Mr. Foster fails to demonstrate how Bloom's Agent Agreement containing the confidentiality clause and, along with the disclosure to TruStone created an unethical situation or breached the Agent Agreement in any way. These inconsistencies in Mr. Foster's opinion cannot be overlooked.

Lastly, there is a no agency clause in the Agent Agreement, Section 9 of the Agent Agreement specifically states no employment, and that the relationship between the parties is nothing more than an independent agent and there is no partnership of any kind. Bloom was never hired nor intended to act as a fiduciary. This clause disputes Mr. Foster's conclusions and opinion (s) specifically his 1st and 2nd Opinion. Mr. Foster relied on flawed methodology and he failed to identify the "no agency clause" in the Agent Agreement. In Mr. Foster's 3rd Opinion, I find that his attempt to portray a lack of disclosure is simply not factual. Had Mr. Foster realized the duty to maintain confidentiality in the aircraft purchase his opinion would have been different. Combine this with the fact that Bloom had at a minimum two justified reasons for doing a back to back( that being to maintain confidentiality in the transaction and the second would qualify as an Opportunistic Intermediary) there is no breach of contract or breach of fiduciary responsibility because it is my opinion no fiduciary relationship was ever implied in the Agent Agreement.

---

[12] https://en.wikipedia.org/wiki/Know_your_customer



Report by Jason Zilberbrand
Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft
purchase agreements and airframe/engine hourly programs.

On behalf of the Plaintiff: Bloom Business Jets, LLC.

_____

## 4.    Misinterprets role financing and KYC had in the transaction

In Mr. Foster's 4th Opinion he states that Bloom, *"failed to engage in an honest and transparent transaction by attempting to deceive Glencove and its principals, by failing to disclose relevant information regarding the transaction, and by actively concealing known and relevant facts relating to the transaction."* Mr. Foster fails to recognize that there was proper discloser and that KYC could have not been completed if there was not. It is important to note that KYC cannot be completed if the identity of the borrower is withheld. It is understood in aviation transactions that use of an escrow company plays a pivotal role in having a successful closing to an aircraft transaction. Escrow had substantial responsibility in this transaction as they had to provide closing documents to the FAA, and disburse monies held as deposits to the appropriate parties. One of those parties is TruStone, and as a lender they would have relied on KYC to not only identify the buyer or borrower as suitable, but also to complete due diligence for compliance purposes that the funds being used were not those from illegal activities or money laundering. If IATS the escrow company or the bank TruStone fail to know the parties and components of the transaction than this compliance is in jeopardy. Furthermore, Pursuant to **USA Patriot Act of 2001**[13] it is a requirement to be in compliance to prevent terrorism. It is my opinion that had Mr. Foster realized his flawed methodology he would have come to a different opinion as no major lender, financial institution or bank would breach KYC or Patriot Act laws to fulfil the loan on a private jet.

Likewise, had Mr. Foster recognized the "no agency clause" he would have come to a different opinion, as it is clear the Agent Agreement had no clause preventing or precluding a back to back. In fact, the agreement only makes reference to an aircraft type meeting certain criterion. It is important to note that these criteria are critical to the eventual successful funding of the aircraft, and the loan that Glencove signed with TruStone. Due to the poor credit worthiness of the borrower and per the email from TruStone to Aircraft Finance Group indicating the Pierce's could not qualify for the loan, the aircraft itself was relied upon as additional collateral. The aircraft the Pierce's purchased was the lowest time example in the fleet, it therefore had a higher residual value based on total time alone. This is important as TruStone in the event of a default by the borrower would have an asset on their books that could be resold for more money than another similar higher time aircraft. It is important to point out that Bloom performed his duties under the Agent Agreement and furthermore, he met his client's expectations by achieving a successful close with financing. Furthermore, his ability to

_____

[13] https://en.wikipedia.org/wiki/Patriot_Act



Report by Jason Zilberbrand
Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.

On behalf of the Plaintiff: Bloom Business Jets, LLC.

_____

locate a suitable aircraft to a client with a high debt to income ratio and satisfy both the lender and the buyer should not go unnoticed. It is because of Blooms due diligence that the buyer was satisfied and agreed to close.

## 5.  Misapplies aviation definition of Fair Market Value

Mr. Foster in his report states in his opinion number 6 that Bloom created a conflict of interest and failed to disclose this conflict of interest. I believe Mr. Foster relied upon his highly speculative assumptions and did not spend adequate time researching the provided exhibits to the lawsuit. The fact is Bloom did not create a conflict of interest as no failure to disclose information to all parties in the transaction ever occurred. In fact, Bloom did disclose at the appropriate time the end buyer to the lender and the lender did complete its due diligence, KYC and Patriot Act compliance. We know this to be fact as the borrower Glencove was sent the chain of title and was aware the seller of the aircraft was Loretta with Big Horn Exploration, LLC acting as an intermediary.

Likewise, lending institutions require an appraisal before agreeing to a loan amount. The reason this is important is that the it establishes **Current Fair Market Value**, a defined term under USPAP and the ASA of which Bloom was a member in good standing at the time of the appraisal.

It is important that we use the proper definition of **Fair Market Value**[14] which is an opinion expressed in terms of money, at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts, as of a specific date.

In my review of the contracts, and purchase agreements there was no indication that any information was withheld from any party to the transaction.

In an article that appeared in **AIN**[15] (Aviation International News), Janine Iannarelli, an independent broker and the President of Par Avion, states that *"As long as there is a willing buyer and a willing seller and you're not paying over market for the airplane, there's a fair transaction."*

---

[14] http://www.appraisers.org/Disciplines/Machinery-Technical-Specialties/mts-appraiser-resources/DefinitionsOfValue
[15] https://www.ainonline.com/aviation-news/business-aviation/2017-10-08/aircraft-brokers-look-ethics-guidance-bizav



**Report by Jason Zilberbrand**
**Specialist field: General aviation aircraft valuations and appraisals, aircraft transactions, aircraft purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

This is an important concept in understanding the relationship between Bloom and the Pierce's and furthermore indicates that Bloom did indeed provide professional services per the signed agreement and did not breach it.

In fact, the bank did lend on the aircraft purchase and the appraisal supported both the sales price and the loan amount. Clearly, the Pierce's may not have been able to purchase the aircraft for an amount below FMV, but whether or not the aircraft could have been purchased cheaper despite the opinions of Mr. Foster does not indicate unethical behavior. No one was coerced to close and all parties were willing participants. In fact, Glencove had numerous opportunities to walk away even after learning of the chain of title. As stated in my Rule 26 report, the fact that Bloom and Big Horn Exploration, LLC were an intermediary in this transaction added risk to Bloom and Big Horn Exploration, LLC, not to the end purchaser the Pierce's.

Due to the fact that if the Pierce's failed to close, the purchaser would still be Big Horn Exploration. In fact, if the deal did not close with the Pierce's and unless Big Horn Exploration was able to quickly locate another buyer, the aircraft would have become inventory for resale purposes and the rightful owner would have been Big Horn Exploration. Furthermore, in addition to this risk of potential ownership in the event of a default by the Pierce's, Big Horn Exploration had made improvements to the aircraft and completed maintenance which in turn created an asset in better condition worth potentially more money than if it were direct from the originating seller.


6.      **Misapplies Aviation Industry Guidelines**

As stated previously, Mr. Foster relies on three aviation organizations to support his opinion on a breach of ethics:

1. NBAA
2. NATA
3. IADA



**Report by Jason Zilberbrand**
**Specialist field: General aviation aircraft valuations and appraisals, aircraft transactions, aircraft**
**purchase agreements and airframe/engine hourly programs.**

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

With regards to NBAA, they have established guidance on ethics and ethical behavior. According to the NBAA's website and an article published January 11th, 2018[16], states that *"NBAA recently published "Ethical Business Aviation Transactions,"* a resource outlining best practices for ethical transactions involving business aircraft products and services"* and *"The NBAA ethics statement is not a replacement for company-specific ethics policies."* In fact, the NBAA statements are only applicable if all the Parties to Bloom v. Glencove were members of NBAA at the time of the transaction, and its relevance in terms of providing governance to an aircraft purchase transaction simply stated is non-existent. Reason being is that NBAA has published eight (8)[17] articles about back to backs, and how to complete them. A reasonable person would see the articles as promoting this type of transaction as normal and customary in aviation.

With regards to NATA and their ethics code of conduct. I agree this has been accurately portrayed in Mr. Fosters opinion, however, Mr. Foster fails in two areas to support his opinion. The first, is that the NATA has no authority what so ever to govern or set standards for aviation aircraft transactions. Secondly, none of the parties involved in the Bloom v. Glencove case are members of the NATA, nor can I find any mention of the NATA in any legal documents I have reviewed. This would lead a reasonable person to conclude that NATA has no relevance what so ever in the opinion of Mr. Foster and it should be disregarded.

With regards to IADA and their Code of Ethics, I have demonstrated IADA is nothing more than an attempt to create obstacles to fair trade in an unregulated industry. Their board members conduct themselves outside of their own by-laws and Code of Ethics and this is patterned and habitual behavior. It is culture that runs deep in the history of the organization which is to promote ethics and ethical behavior through marketing while breaching them when they believe no one is either looking or paying attention. Furthermore, the IADA misrepresentation of transaction volume simply can be overlooked as Mr. Foster must be found not credible on this basis alone. It is my conclusion that along with NBAA and NATA that the IADA Code of Ethics is totally irrelevant to the case of Bloom v. Glencove and has no authority to govern any transaction much less one that does not involve any IADA members with the exception of the escrow company IATS who is a member of IADA. Clearly, any so-called breach of ethical behavior as Mr. Foster states in his report was not perpetrated by Bloom as Bloom is not, nor has he ever signed the IADA Code of Ethics or attempted to be part of their association.

---

[16] https://nbaa.org/flight-department-administration/aircraft-registration-transactions/ethical-business-aviation-transactions/3-things-know-nbaas-ethics-statement/
[17] https://nbaa.org/?s=back+to+back+transactions



Report by Jason Zilberbrand
Specialist field:  General aviation aircraft valuations and appraisals, aircraft transactions, aircraft
purchase agreements and airframe/engine hourly programs.

On behalf of the Plaintiff: Bloom Business Jets, LLC.

_____

## 7.   Conclusion of Rebuttal Opinion(s):

In conclusion, I have reviewed all the supplied documentation and the Expert Witness Report of Mr. Foster and I have come to the conclusion, based on my experience and knowledge of the industry, that Mr. Foster's opinion(s) are not relevant to the lawsuit. The associations he mentions have no governance on the parties to the suit. Mr. Foster relied on flawed methodology that allowed him to come to a conclusion that Bloom was unethical due to his failure to 1. Disclose pertinent information and 2. Act as a fiduciary to the Pierce's.

With regards to Mr. Foster's opinion on Bloom's breach of ethics, I have demonstrated that Bloom not only disclosed all of the information to the parties involved in the transaction but did so in full compliance of KYC and the Patriot Act. We know this because at no time was Bloom ever considered the borrower or the purchaser of the aircraft only as the intermediary in a back to back, and at no time does Bloom ever indicate he was borrowing the funds from TruStone as the purchaser. We know TruStone had the information of Glencove, as Glencove is listed as the rightful owner of the aircraft. We know Glencove had the name of the originating seller Loretto, because they were supplied with chain of title and a clear title of ownership prior to closing and more importantly prior to funding.

Mr. Foster does an excellent job of providing an opinion on three associations, however as stated none of them have any authority to govern an aircraft transaction. The only party to the transaction that was a member of IADA was the escrow IATS. After reviewing the IADA Code of Ethics, and determining that IATS was in fact the escrow company that closed the sale of the aircraft and also the same company that orchestrated the transaction(s) and allowed a seamless back to back to occur without error I have come to the conclusion that IATS did not breach the IADA Code of Ethics, as no ethics were ever breached by allowing a back to back to occur. In fact, back to backs are so customary in general aviation and business aviation that the NBAA offers numerous articles to support completing one successfully. Furthermore, we know that other IADA members conduct back to backs as customary and in CFS's specific situation they are still on the board of IADA and an active member as is Jetcraft.

Lastly, Mr. Foster's leap of formulating an opinion as to whether or not Bloom breached any Code of Ethics was flawed from the start as he was the only party to the transaction that holds any certificate with regards to ethics training. It is with this that I can state Mr. Foster's opinion lacks credibility, and any supporting evidence that would find it



**Report by Jason Zilberbrand**
**Specialist field:** General aviation aircraft valuations and appraisals, aircraft transactions, aircraft
purchase agreements and airframe/engine hourly programs.

**On behalf of the Plaintiff: Bloom Business Jets, LLC.**

otherwise credible.

### 8. Statement of compliance

I understand my duty as an expert witness is to the court. I have complied with that duty and will continue to comply with it. This report includes all matters relevant to the issues on which my expert evidence is given. I have given details in this report of any matters which might affect the validity of this report.

### 9. Statement of truth

*I confirm that I have made clear which facts and matters referred to in this report are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer.*

### 10. Statement of conflicts

I confirm that I have no conflict of interest of any kind, other than any which I have already set out in this report. I do not consider that any interest which I have disclosed affects my suitability to give expert evidence on any issue on which I have given evidence and I will advise the party by whom I am instructed if, between the date of this report and the trial, there is any change in circumstances which affects this statement.

April 15th, 2019

***Signature***....................................................................***Date***.........................

16

# Appendix

# <u>List of Documents Reviewed</u>

1. *Registration of aircraft*
2. *Johnny Foster Expert Witness report*
3. *Segment 001*
4. *Segment 001*
5. *Glencove 2512-0025*
6. *Glencove 002475-002*
7. *Glencove 002456-02474*
8. *Segment 001 002374-002*
9. *Segment 002 002374-002*
10. *Glencoe 002355-002354*
11. *Expert Designation.  4851*
12. *JetNet Data*
13. *Attachment to demand letter*
14. *Demand letter*
15. *Federal Court case file Zetta Jet/Jetcraft*
16. *CFS transactions*
17. *Jetnet top 500 list*
18. *IADA website*
19. *NARA way back machine listing*
20. *Florida Filings for IADA*
21. *Google Maps*
22. *NARA and IADA certification policies*
23. *NATA code of ethics*
24. *NBAA code of ethics guidelines*
25. *Various magazine and internet articles*
26. *CFS v. General Aviation Services*
27. *Wedderbrun Corporation v. Jetcraft Corporation*
28. *Jetcraft v. Corporate Jet Sales*
29. *Aviation Boss spend lavishly months before his company went bust in Dispatch Weekly*
30. *JetZone LLC listing in Jetnet*



936 views  |  Jun 28, 2016, 01:53pm

# Where Do You Start When Buying An Airplane?



**Jim Gregory** Brand Contributor
Business Aviation BRANDVOICE

Today, when you start to look for an airplane to buy, you have many options. You can begin with Google `GOOGL +0%` . There are hundreds if not thousands of airplanes listed for sale on any number of websites.

You can even find the owner on the FAA website and try to negotiate directly – although the owner probably already has a broker you'll be dealing with. Unless you are your own huge negotiator like Donald Trump, you could also begin to search the Internet for your own broker to help you get through the process.

Beware. There are about a thousand of them out there.

Aircraft brokers generally do not need to adhere to any standards of ethical conduct. Unlike licensed like real estate brokers, aircraft brokers can operate outside the rules or without any rules. So, you don't really know if the aircraft broker you've found online is good, or even ethical.

If you know and trust someone enough to rely on him or her to advise you through the process, and they seem to know what they are doing, you're already half way there. But, if you are new to the market, or still have a bad taste in your mouth from the last time you bought or sold an airplane, you may want to check out the "certified" brokers of the National Aircraft Resale Association (NARA).





RIDE FOR $5 A DAY*

*Indian*
MOTORCYCLE

FIND YOUR RIDE



Finding a trustworthy broker is critical. (L–R) Jim Wilkes, Founder and Partner of Wilkes & McHugh, PA, and broker Johnny Foster in front of Gulfstream 450 have done 10 airplane deals in 25 years.

NARA has been around more than 25 years and today it is comprised of two major member segments: 1) seasoned aircraft brokers who do most of the heavy lifting in the buying and selling process by providing astute counsel. And 2) the many aviation services that provide expert guidance related to specific disciplines, such as appraisers, financiers, insurers, lawyers, aircraft managers and tax counselors, along with the pre-buy inspectors and maintenance specialists.

If you check out the NARA website, you see immediately there's an important differentiator at work with NARA members. They undergo an extensive certification process by their peers, according to current NARA Chairman Johnny Foster, President & CEO of OGARAJETS, based in Atlanta.

"To become a Certified Aircraft Broker or Dealer with NARA credentials, a candidate has to pass a rigorous application process that assures only the most respected and experienced aircraft brokers and dealers become NARA members," Foster said. "In addition, each prospective NARA Certified Aircraft Broker or Dealer has to be sponsored by three current NARA members."

Then the entire NARA Certified Brokers/Dealers membership votes on admission. NARA Certified Brokers and Dealers must also participate in a rigid ongoing program of education and recurrent training to remain current on best practices and new developments.

Business Plan Templates →

No.1 Stock to Buy →

Cheap Aircraft Parts →

Top Aircraft Manufacturers →

Charter a Private Jet →

Best Luxury Private Jets →

Sponsored    local

Sponsored     local

current on best practices and new developments.

All NARA members strictly adhere to the NARA Code of Ethics that guarantees they will conduct themselves honorably and represent the best interests of their clients. Every NARA member agrees to create and maintain a reputation for honesty, integrity and transparency and adhere to the highest ethical standards in their dealings.

To be accepted into the organization, they commit to continually improve the quality of their services, products, and operations in order to provide a superior level of service, knowledge and value to their clients. Additionally they commit to avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to an aircraft transaction while keeping with the "highest standards of business and professionalism." Furthermore, they pledge to reveal their true ownership or interest in any aircraft they represent to the purchaser.

According to Foster, the 41 NARA Certified Broker/Dealers represent less than five percent of the 1,000 aircraft brokers worldwide. However, he says, they account for nearly half of the $92 billion in annual used aircraft transactions around the world. That may say something about their expertise and connections.

To help get you started, the NARA website lists hundreds of airplanes for sale by NARA brokers and the catalog is updated weekly, by model and manufacturer. There is also a portal that helps you find a certified broker along with other professionals to help you finance, insure or maintain your aircraft.

For more information about NARA, its members, its code of ethics, and aircraft for sale, visit the NARA website at NARAaircraft.com. Here's hoping you can make a good airplane deal.

---

 **Jim Gregory**  Brand Contributor

---

In the course of working for aircraft builders and systems manufacturers, I frequently talk to aircraft owners and operators from around the world. They all tell me what... **Read More**

---

©2019 Forbes Media LLC. All Rights Reserved.    AdChoices